## Case No. 17,376.
### WELFORD v. GILHAM.
[2 Cranch, C. C. 556.] [1]
Circuit Court, District of Columbia.  April Term, 1825.

GAMING DEBTS—INDEMNITY NOTE—JUDGMENTS—PLEADING.

1. A note given as indemnity to the bail, who had paid off a judgment obtained against his principal for a gaming debt, and for which the bail was liable, and had become fixed before he received the note, was not a note the consideration of any part of which was for money or other valuable thing won at any game, within the meaning of the Virginia statute against gaming.

2. A plea of the statute of gaming to a promissory note is substantially defective in not stating what debt or judgment the note was given to secure, by what court the judgment was rendered, and the names of the persons who won and lost the money.

3. The judgments which are made void by the Virginia statute against gaming are judgments voluntarily confessed by way of security for a gaming debt, not judgments rendered in invitum.

4. The statute of Virginia makes void all contracts where any part of the consideration is money won at any game.

Assumpsit against the indorser of Farish's note. The defendant pleaded the Virginia statute of gaming of the 8th of December, 1792 (page 174), which makes absolutely void all contracts where any part of the consideration is for money or other valuable thing won at any game. General demurrer, and joinder.

Mr. Mason, for defendant. cited Woodson v. Barrett, 2 Hen. & M. 80.

Mr. Wise, contra, cited Alcinbrook v. Hall, 2 Wils. 309.

CRANCH, Chief Judge. The defendant was sued as indorser of one Farish's note, and pleaded: 1st. The general issue. 2d. That before the making of the note, the maker and one Boyd "played together at a certain unlawful game at cards commonly called loo, for divers sums of money, upon tick and credit. and not ready money;" and that Farish lost, and Boyd won, divers sums

[1] [Reported by Hon. William Cranch, Chief Judge.]

of money amounting to $410. "And afterwards there was instituted by the said Boyd against the said Farish upon his promises and agreements to pay the said sums of money so lost as aforesaid, a suit at law in the ——— court, in the city of Baltimore, in which such proceedings were had, that the said R. G. Welford, the plaintiff, became and entered as the special bail for the said Farish; and thereafter a judgment was rendered in and by the said court against the said Farish for the amount of moneys so lost by him as aforesaid, and thereupon certain proceedings were had and commenced by the said Boyd against the said Welford as special bail as aforesaid, in order to make him liable for and pay the amount of the judgment aforesaid; when, in order to relieve the said Welford as special bail as aforesaid, the note in the declaration mentioned was drawn and made by the said Farish and indorsed by the defendant with the intent and for the purpose of relieving the said Welford as special bail as aforesaid, and of being delivered to the said Boyd, in lieu of the said Welford's engagement as bail as aforesaid, and to secure the payment of the judgment aforesaid; and for the purposes and considerations aforesaid, the said note so drawn and indorsed as aforesaid, was thereafter delivered to the said A. H. Boyd, who took and received the same and carried the said note to be placed for collection in the Bank of Potomac, in the town of Alexandria. And the defendant avers that the said plaintiff thereafter, well knowing the consideration upon which the said judgment had been rendered, and in which he had entered as special bail as aforesaid, and that the same was rendered for the said amount of moneys so lost at the game aforesaid, paid off and discharged the same, and then and there took and received the said note mentioned, well knowing the purposes and considerations for which the same had been so drawn, indorsed, and delivered as aforesaid: and the defendant says that by reason of the premises, and by force of the statute in such case made and provided, the said note was then and is wholly void; and this he is ready to verify. Wherefore," &c. 3d. The third plea is like the second. excepting that it avers that the note was placed in the Mechanics Bank of Baltimore, for collection. who placed it in the Bank of Potomac for collection: and that it was after the dishonor of the note that the plaintiff paid off the judgment and received the note. 4th. The fourth plea is. "that the note in the declaration mentioned was drawn and given, in part, to secure a certain debt and judgment which before that time had arisen and been rendered for certain moneys won at unlawful gaming; and that the plaintiff took and received the said note, well knowing the purposes and consideration for which the same had been so drawn and given as aforesaid; and the defendant says, that, by reason of the premises, and by force of the statute in

such cases made and provided, the said note was and is wholly void, and this he is ready to verify," &c. To the three last pleas there was a general demurrer and joinder.

The main question upon this demurrer is. whether the Virginia statute against gaming of the 8th of December, 1792 (chapter 96), is a bar to an action brought by the bail, (who was fixed upon a judgment against his principal for a gaming debt, and who paid off that judgment,) against the indorser of a note given to the bail for the amount which he had so paid. Or, in other words, whether it appears, by the pleadings, that any part of the consideration of this note was money won at cards, or other game, within the meaning of that statute? It is stated in the second plea, that the note was made and indorsed for the purpose of relieving Welford as special bail, and with intent to secure the payment of the judgment; and that the plaintiff, having paid off the judgment. knowing it to be for a gaming debt. took the note, knowing the intent with which it was made, and its consideration. The plea does not state that at the time the plaintiff became bail, or at the time of the judgment against Farish, or at any time before the plaintiff was fixed, as bail. he knew it to be a gaming debt. It must therefore be taken as a fact that he was innocently bound for the debt, and could not, at law, discharge himself but by paying it; for I presume he could not have pleaded the statute in bar of the scire facias. It is true that in second Institute (page 470), Lord Coke, in his commentary upon the statute of 13 Edw. I. c. 45, which gives the writ of scire facias to revive judgments in personal actions, says, "that the tenant or defendant, though he be stranger to the recovery, shall not plead against the recovery any thing that proveth it to be erroneous or voidable; but he may plead matter that proveth the recovery void; as that it was coram non judice, or the like." "Neither shall he, in a scire facias, plead any thing against the title or matter of the recovery, where he may have an action, and therein falsify the same." "But the tenant or defendant may plead divers matters, after the judgment given, to bar the plaintiff of execution. as outlawry, a release of actions." &c. And again, in page 472. he says: "And seeing the words of the scire facias be. quare executionem habere non debet. the tenant or defendant may plead any thing in bar of execution, as hath been said before." It is true also that the act of assembly of Virginia against gaming. of the 8th of December, 1792 (page 174), declares, "that all promises, agreements, notes, bills, bonds, or other contracts, judgments. mortgages. or other securities or conveyances whatsoever made, given, granted, drawn, or entered into. or executed by any person or persons whatsoever. where the whole or any part of the consideration of such promise, agreement, conveyances or securities, shall be for money. 'won' at any game, shall be

utterly void, frustrate, and of non effect, to all intents and purposes whatsoever." Yet I am strongly inclined to think that the judgments contemplated by that act, are only such judgments as should be voluntarily confessed by way of security for the debt. The words are, "judgments, mortgages, or other securities or conveyances," "made, given, granted, drawn, or entered into, or executed," "by any person." These expressions do not seem to refer to judgments rendered, by a court, in invitum; but such as should be agreed beforehand to be confessed by way of security; which was a very common mode of giving security in England at the time of the statute of 9 Anne, c. 14, from which the Virginia statute seems to be copied so far as it makes judgments void. The British statute does not use the words "promises, agreements, and other contracts," which are in the statute of Virginia; but it has the words "judgments, mortgages, or other securities or conveyances," and the English courts have decided that although the security is void, yet the contract remains; upon which ground the case of Robinson v. Bland, 2 Burrows, 1077, was decided in favor of the plaintiff; yet that judgment was for money knowingly lent at the time and place of play, and would have been void by the express words of the statute of Anne. unless the word "judgments," in that statute is to be restricted to judgments agreed to be confessed by way of security. If such a restricted construction be not given to the statute, the judgment in the case of Robinson v. Bland, was void the moment it was rendered; and the sheriff was a trespasser in serving the execution.

The judgment therefore of Boyd v. Farish, I apprehend, was not utterly void, so that the bail could avail himself of the statute by plea to the scire facias, as he could if the judgment had been coram non judice. If then, the plaintiff, Welford, was bound at law to pay the debt, and could not discharge himself by plea to the scire facias; and if he paid off the judgment, as the plea states, before he received the note; and if the note was given to him for his indemnity, or in the words of the plea, "for the purpose of relieving the said Welford, as special bail as aforesaid," and to secure to him the payment of the amount of the said judgment which he had paid, or was bound or was about to pay, (which I take to be a fair paraphrase, and to be the true meaning of the words, in the plea, "and to secure the payment of the judgment aforesaid,") then I think the facts stated in the plea do not show that any part of the consideration of this note was for money, or valuable thing won at any game, within the meaning of the statute.

I do not perceive any material difference between the second and the third pleas.

The fourth plea I take to be substantially defective in not stating what debt or judgment the note was given to secure; by what court the judgment was rendered; and the names of the persons who won and lost the money.

I am, therefore, of opinion that the judgment upon the demurrer ought to be for the plaintiff.

The other judges concurred.